**CONNOT LAW OFFICE PLLC**
MARK J. CONNOT (10010)
8965 South Eastern Avenue, Ste. 382
Las Vegas, NV  89123
Tel:  702.603.5445
mconnot@connotlaw.com
Attorneys for Defendants Heisu Research Group, LLC,
Sabrina Cuesta and Hugo Romeu

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NEW HORIZON MEDICAL SOLUTIONS LLC,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>HEISU RESEARCH GROUP, LLC, SABRINA CUESTA, and HUGO ROMEU,<br><br>　　　　　　Defendants. | Case No.:<br><br><br>**DEFENDANTS' HEISU RESEARCH GROUP LLC, SABRINA CUESTA, AND HUGO ROMEU'S NOTICE OF REMOVAL** |

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1441(b) and 1332(a), Defendants hereby remove this action from the Eighth Judicial District Court of Clark County, Nevada to the United States District Court for the District of Nevada. In support of this Notice of Removal, Defendants aver as follows:

### Procedural History and Plaintiff's Allegations

1.      Plaintiff, NEW HORIZON MEDICAL SOLUTIONS LLC ("New Horizon") is a Nevada limited liability company.

2.      Defendants are HEISU RESEARCH GROUP, LLC ("Heisu"), a Florida Limited Liability Company with its principal place of business being in Miami-Dade County, Florida,

1

SABRINA CUESTA, an individual citizen of the state of Florida; and HUGO ROMEU, an individual citizen of the state of Florida.

3.     On October 16, 2025, Plaintiff sued Defendants for Breach of Contract and Breach of the Implied Covenant of Good Faith & Fair Dealing (Contract) in the Eighth Judicial District Court in Clark County, Nevada.

**Grounds for Removal**

4.     Removal is proper because there is complete diversity between the parties. 28 U.S.C. § 1332(a).

5.     Plaintiff alleges that New Horizon is a Nevada limited liability company with its principal place of business located in Clark County, Nevada. Complaint at ¶ 1. Therefore, for the purposes of diversity jurisdiction, Plaintiff, New Horizon is a citizen of Nevada.  28 U.S.C. § 1332(c)(1).

6.     Defendant, Heisu is a limited liability company organized under Florida law with its principal place of business in Miami-Dade County, Florida. Therefore, for the purposes of diversity jurisdiction, Defendant, Heisu is a citizen of Florida. *See id.*

7.     Defendant, Sabrina Cuesta is a citizen of the United States and is domiciled in Florida. Therefore, for the purposes of diversity jurisdiction, Sabrina Cuesta is a citizen of Florida. *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001) (citations omitted); *see also* Complaint ¶ 3.

8.     Defendant, Hugo Romeu is a citizen of the United States and is domiciled in Florida. Therefore, for the purposes of diversity jurisdiction, Hugo Romeu is a citizen of Florida. *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001) (citations omitted); *see also* Complaint ¶ 4.

9.     Accordingly, complete diversity of citizenship exists because none of the defendants named in this action are citizens of Nevada for purposes of diversity jurisdiction.

10.     Additionally, the amount in controversy exceeds $75,000, excluding interests and costs. 28 U.S.C. § 1332(a). *See* Plaintiff's Prayer for Relief within the Complaint, and also ¶¶ 14 and 17.

11.     Indeed, Plaintiff alleges in the Complaint that they have "suffered monetary damages in an amount no less than $6,553,097.32..." Complaint ¶ 17.

12.     Accordingly, it is apparent from the face of the Complaint that the amount in controversy exceeds $75,000 as required by 28 U.S.C. § 1332. *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 376 (9th Cir. 1997 ("district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy") (citations omitted); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.")

**The Procedural Requirements for Removal Have Been Satisfied**

13.     The removing parties are the Defendants. 28 U.S.C. §1446(a).

14.     The Summons and Complaint were served on Defendants on or around October 23, 2025.

15.     Pursuant to 28 U.S.C. § 1446(b)(1), Defendants are timely filing this Notice of Removal within 30 days after the receipt of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.

16.     Pursuant to 28 U.S.C. § 1446(b)(2)(A), all defendants who have been properly joined and served join in or consent to the removal of this case to federal court.

17.     The United States District Court for the District of Nevada is the proper court for removal because the basis of this civil action is not inconsistent with the Constitution of Nevada or the Constitution of the United States, NRS § 14.065(1); there were sufficient minimum contacts with the state of Nevada and it is thereby fair for this court to exercise its personal jurisdiction; and, this court embraces the geographical boundary of the court in which this action was initially brought.

3

18.     Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all process, pleadings, and orders served on the defendants in the action, as well as copy of the state-court docket sheet, pending in the Eighth Judicial District Court of Clark County, Nevada are attached hereto as Composite Exhibit 1, and are incorporated herein by this reference. No further proceedings have occurred in the State Court Action.

19.     After filing this Notice of Removal, Defendants will promptly serve written notice of this Notice of Removal on counsel for all adverse parties and file the same with the Clerk of the Eighth Judicial District Court of Clark County, Nevada in accordance with 28 U.S.C. §1446(d).

### **Non-Waiver of Defenses**

20.     By removing this action from the Eighth Judicial District Court of Clark County, Nevada, Defendants do not waive any defenses available to them.

21.     By removing this action from the Eighth Judicial District Court of Clark County, Nevada, Defendants do not admit any of the allegations contained in Plaintiff's complaint.

22.     Defendants reserve the right to amend or supplement this Notice of Removal and/or to present additional arguments or allegations in support of removal.

WHEREFORE, Defendants respectfully request the Notice of Removal be accepted as good and sufficient as required by law, and that further proceedings in the District Court of Clark County, Nevada action be discontinued, and that this suit be removed from the District Court of Clark County, Nevada, to the United States District Court for the District of Nevada, and that this Court assume full and complete jurisdiction thereof, and grant all general equitable relief to which the Defendants are entitled.

Dated: November 20, 2025.

Respectfully submitted,

**CONNOT LAW OFFICE PLLC**

By: */s/ Mark J. Connot*
     MARK J. CONNOT (10010)
     Attorney for Defendants Heisu
     Research Group LLC,
     Sabrina Cuesta and Hugo Romeu

4

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of Connot Law Office PLLC, and that on the 20th day of November, 2025, I served a copy of the foregoing **DEFENDANTS' HEISU RESEARCH GROUP LLC, SABRINA CUESTA, AND HUGO ROMEU'S NOTICE OF REMOVAL** via e-mail transmission to the parties listed below:

Bart J. Verdirame, Esq.
General Counsel for New
Horizon Medical Solutions, LLC
8395 W Sunset Rd, Suite #200
Las Vegas, NV 89113
Telephone: (702) 378-6863
legal@nhmedical.com

Attorneys for Plaintiff New Horizon
Medical Solutions, LLC

Michael V. Cristalli, Esq.
William D. Schuller, Esq.
Forrest Zimmerman, Esq.
Clark Hill PLLC
1700 S. Pavilion Center Dr., Ste. 500
Las Vegas, Nevada 89135
Telephone: (702) 862-8300
Facsimile: (702) 778-9709
mcristalli@clarkhill.com
wschuller@clarkhill.com
fzimmerman@clarkhill.com

Attorneys for Plaintiff New Horizon
Medical Solutions, LLC

/s/ Doreen Loffredo
Doreen Loffredo

5

# EXHIBIT 1

Skip to Main Content Logout My Account Search Menu New District Civil/Criminal Search Refine Search  Back    Location : District Court Civil/Criminal   Help

# REGISTER OF ACTIONS
## CASE NO. A-25-930696-C

| | | |
|---|---|---|
| New Horizon Medical Solutions LLC, Plaintiff(s) vs. Heisu Research Group LLC, Defendant(s) | §<br>§<br>§<br>§<br>§<br>§ | Case Type: **Collection of Accounts**<br>Date Filed: **10/16/2025**<br>Location: **Department 10**<br>Cross-Reference Case Number: **A930696** |

---

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| **Defendant** | **Cuesta, Sabrina** | |
| **Defendant** | **Heisu Research Group LLC** | |
| **Defendant** | **Romeu, Hugo** | |
| **Plaintiff** | **New Horizon Medical Solutions LLC** | **Bart J. Verdirame**<br>*Retained*<br>7028073380(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 10/16/2025 | **Complaint      Doc ID# 1**<br>*[1] Complaint* |
| 10/16/2025 | **Summons Electronically Issued - Service Pending      Doc ID# 2**<br>*[2] Summons* |
| 10/20/2025 | **Summons Electronically Issued - Service Pending      Doc ID# 3**<br>*[3] Summons* |
| 10/27/2025 | **Proof of Service      Doc ID# 4**<br>*[4] Sabrina Proof of Service* |
| 11/04/2025 | **Notice of Association of Counsel      Doc ID# 5**<br>*[5] Notice of Association of Counsel* |

---

### FINANCIAL INFORMATION

**Plaintiff** New Horizon Medical Solutions LLC
Total Financial Assessment                                                                     270.00
Total Payments and Credits                                                                     270.00
**Balance Due as of 11/20/2025**                                                                **0.00**

| | | | | |
|---|---|---|---|---|
| 10/17/2025 | Transaction Assessment | | | 270.00 |
| 10/17/2025 | Efile Payment | Receipt # 2025-82498-CCCLK | New Horizon Medical Solutions, LLC | (270.00) |

## DISTRICT COURT CIVIL COVER SHEET
Clark _____ County, Nevada

Case No. _____
*(Assigned by Clerk's Office)*

CASE NO. A2580698C
Department 10

### I. Party Information *(provide both home and mailing addresses if different)*

| Plaintiff(s) (name/address/phone): | Defendant(s) (name/address/phone): |
|---|---|
| New Horizon Medical Solutions, LLC <br> 8395 W. Sunset Rd., Las Vegas, NV 89113 | Heisu Research Group, LLC <br> 152 NW 168 TH ST SECOND FLOORNORTH MIAMI BEACH, FL 33169 <br> 305-705-3475 |
| **Attorney (name/address/phone):** <br> Bart J. Verdirame, Esq. <br> 8395 W. Sunset Rd., Las Vegas, NV 89113 <br> (702) 378-6863 | **Attorney (name/address/phone):** |

### II. Nature of Controversy *(please select the one most applicable filing type below)*

#### Civil Case Filing Types

| Real Property | Torts | |
|---|---|---|
| **Landlord/Tenant** <br> ☐ Unlawful Detainer <br> ☐ Other Landlord/Tenant <br> **Title to Property** <br> ☐ Judicial Foreclosure <br> ☐ Other Title to Property <br> **Other Real Property** <br> ☐ Condemnation/Eminent Domain <br> ☐ Other Real Property | **Negligence** <br> ☐ Auto <br> ☐ Premises Liability <br> ☐ Other Negligence <br> **Malpractice** <br> ☐ Medical/Dental <br> ☐ Legal <br> ☐ Accounting <br> ☐ Other Malpractice | **Other Torts** <br> ☐ Product Liability <br> ☐ Intentional Misconduct <br> ☐ Employment Tort <br> ☐ Insurance Tort <br> ☐ Other Tort |

| Probate | Construction Defect & Contract | Judicial Review/Appeal |
|---|---|---|
| **Probate** *(select case type and estate value)* <br> ☐ Summary Administration <br> ☐ General Administration <br> ☐ Special Administration <br> ☐ Set Aside ☐ Surviving Spouse <br> ☐ Trust/Conservatorship <br> ☐ Other Probate <br> **Estate Value** <br> ☐ Greater than $300,000 <br> ☐ $200,000-$300,000 <br> ☐ $100,001-$199,999 <br> ☐ $25,001-$100,000 <br> ☐ $20,001-$25,000 <br> ☐ $2,501-20,000 <br> ☐ $2,500 or less | **Construction Defect** <br> ☐ Chapter 40 <br> ☐ Other Construction Defect <br> **Contract Case** <br> ☐ Uniform Commercial Code <br> ☐ Building and Construction <br> ☐ Insurance Carrier <br> ☐ Commercial Instrument <br> ☑ Collection of Accounts <br> ☐ Employment Contract <br> ☐ Other Contract | **Judicial Review** <br> ☐ Foreclosure Mediation Case <br> ☐ Petition to Seal Records <br> ☐ Mental Competency <br> **Nevada State Agency Appeal** <br> ☐ Department of Motor Vehicle <br> ☐ Worker's Compensation <br> ☐ Other Nevada State Agency <br> **Appeal Other** <br> ☐ Appeal from Lower Court <br> ☐ Other Judicial Review/Appeal |

| Civil Writ | | Other Civil Filing |
|---|---|---|
| **Civil Writ** <br> ☐ Writ of Habeas Corpus <br> ☐ Writ of Mandamus <br> ☐ Writ of Quo Warrant | ☐ Writ of Prohibition <br> ☐ Other Civil Writ | **Other Civil Filing** <br> ☐ Compromise of Minor's Claim <br> ☐ Foreign Judgment <br> ☐ Other Civil Matters |

*Business Court filings should be filed using the Business Court civil coversheet.*

10/16/2025
Date

*Signature of initiating party or representative*

*See other side for family-related case filings.*

**Electronically Filed**
**10/16/2025 2:41 PM**
**Steven D. Grierson**
**CLERK OF THE COURT**

COMP
Bart J. Verdirame, Esq.
Nevada Bar No. 8704
General Counsel for
New Horizon Medical Solutions, LLC
8395 W Sunset Rd, Suite #200
Las Vegas, NV 89113
Telephone: (702) 378-6863
legal@nhmedical.com
Attorney for Plaintiff

CASE NO.: A-25-906983-C

Department 10

EIGHTH JUDICIAL DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| New Horizon Medical Solutions, LLC<br><br>Plaintiff,<br><br>vs.<br><br>Heisu Research Group LLC; Sabrina Cuesta, an Individual; Hugo Romeu, an individual; DOES I through X, inclusive; and ROE Business Entities I through X, inclusive<br><br>Defendants. | CASE NO.:<br><br>DEPT. NO.: |

**COMPLAINT**

Plaintiff, NEW HORIZON MEDICAL SOLUTIONS, LLC ("Plaintiff"), by and through its undersigned representative, complains against Defendants HEISU RESEARCH GROUP LLC; SABRINA CUESTA (also known as SABRINA MICHELLE CUESTA OQUENDO and SABRINA MICHELLE CUESTA), an individual; HUGO ROMEU, an individual; DOES I

through X, inclusive; and ROE BUSINESS ENTITIES I through X, inclusive, and alleges as follow:

## I. PARTIES

1. Plaintiff, NEW HORIZON MEDICAL SOLUTIONS, LLC ("Plaintiff"), is a Nevada limited liability company with its principal place of business located in Clark County, Nevada.

2. Defendant, **HEISU RESEARCH GROUP LLC** ("Defendant Heisu"), is a Florida limited liability company with its principal place of business located at 152 NW 168th Street, Second Floor, North Miami Beach, FL 33169. Defendant Heisu may be served with process at 152 NW 168th Street, Second Floor, North Miami Beach, FL 33169 and also may be served with process at its Registered Agent, Deborah M. Martin, Esq., Martin Law P.A., 9240 Sunset Drive, Suite 109, Miami, Florida 33173.

3. Defendant, **SABRINA CUESTA** (also known as SABRINA MICHELLE CUESTA OQUENDO and SABRINA MICHELLE CUESTA) ("Defendant Cuesta"), is an individual residing in the State of Florida. At all relevant times herein, Defendant Cuesta was owner and Authorized Member of Defendant Heisu and acting as an agent, representative, or authorized signatory of Defendant Heisu, including but not limited to serving as Chief Executive Officer of Defendant Heisu and executing the contract at issue in this matter on behalf of Defendant Heisu.

4. Defendant, **HUGO ROMEU** ("Defendant Romeu"), is an individual residing in the State of Florida and is a medical provider with Defendant Heisu. At all relevant times herein, Defendant Romeu was acting as an agent or representative of Defendant Heisu, directed, ratified, or otherwise authorized the acts and omissions alleged in this Complaint, and exercised control over Defendant Heisu's operations and decision-making relevant to the causes of action herein.

5. All acts and/or failures to act alleged herein were duly performed by and/or are attributable to the Defendants, jointly, individually or by and through their agents, employees, or representatives, and such acts were within the scope of any agency, employment, or authority.

6. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as DOES I through X and as ROE Business Entities I through X are presently unknown. Plaintiff will amend this Complaint to include the true names and capacities when they are ascertained.

## II.  JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to NRS 14.065 and NRS 13.010 because Defendants conduct business in Nevada and entered into contractual obligations with a Nevada company, and the parties expressly agreed by contract to Nevada jurisdiction.

8. Venue is proper in Clark County, Nevada under NRS 13.040 because the obligations were to be performed in Clark County and Plaintiff resides in Clark County, and the parties expressly agreed by contract to adjudicate disputes exclusively in Clark County, Nevada.

## III.  FACTS

9. On or about December 30, 2024, Plaintiff NEW HORIZON MEDICAL SOLUTIONS, LLC ("Plaintiff") and Defendant HEISU RESEARCH GROUP LLC ("Heisu") entered into a written agreement titled Net Terms Cellular Tissue Product Agreement (the "Agreement"), under which Plaintiff agreed to supply Heisu with cellular tissue and related medical products. A true and correct copy of the Agreement is attached hereto as Exhibit 1.

10. The Agreement was executed on behalf of Heisu by Defendant Cuesta, who signed as Chief Executive Officer. Each of Defendant Romeu, also identified as a medical provider for

Heisu, and Defendant Cuesta exercised control over the company's finances and, on information and belief, directed or ratified the actions giving rise to this dispute.

11. Under the Agreement, Heisu was required to remit payment to Plaintiff within forty-five (45) days of each invoice. The Agreement also provides for the accrual of late payment fees of 1% per month on any unpaid balance.

12. Between December 2024 and October 2025, Plaintiff delivered large quantities of medical products to Heisu as agreed.

13. Plaintiff has fully performed its contractual obligations, including timely product delivery and invoicing, and Heisu accepted and retained the products without dispute. Defendants have failed to constantly timely pay.

14. As of September 29, 2025, Defendants owed Plaintiff a principal balance of $6,553,097.32, exclusive of late fees, interest, attorney's fees, and costs of collection.

15. Plaintiff issued a written demand for payment on September 19, 2025, in addition to related correspondence with Defendants' counsel, including an email on October 14, 2025 reminding Defendants of their payment delinquency. Copies of such demands and correspondence are attached hereto as Exhibit 2.

16. Plaintiff is informed and believes, and thereon alleges, that Defendants entered into the Agreement without intent to fulfill their payment obligations under the express terms of the Agreement, constituting a fraudulent scheme.

17. As a direct and proximate result of Defendants' breach and misconduct, Plaintiff has suffered monetary damages in an amount no less than $6,553,097.32, exclusive of late fees, interest, attorney's fees, and other relief available at law or in equity.

## IV.  CLAIMS FOR RELIEF

### A. Breach of Contract

18. Plaintiff realleges and incorporates by reference paragraphs 1 through 17 above as though fully set forth herein. This claim is brought against Defendants Heisu Research Group LLC, Sabrina Cuesta, and Hugo Romeu (collectively, "Defendants").

19. Plaintiff and Defendant Heisu entered into a valid and enforceable written Agreement, under which Plaintiff agreed to provide medical products to Defendants in exchange for payment under net-terms provisions.

20. Plaintiff performed all of its obligations under the Agreement by delivering the contracted products in good faith and in accordance with the terms, valued at approximately $10,000,000.

21. Defendants materially breached the Agreement by failing to pay Plaintiff as required. Defendants have paid only around one-third of what they owe and are more than ninety (90) days past due on one hundred percent of their open invoices.

22. As a direct and proximate result of Defendants' breach, Plaintiff has sustained damages in the amount of $6,553,097.32, plus applicable late fees, interest, costs, and attorney's fees, in an amount to be proven at trial.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing (Contract)

23. Plaintiff realleges and incorporates by reference paragraphs 1 through 22 as though fully set forth herein.

24. Every contract under Nevada law includes an implied covenant of good faith and fair dealing, which requires each party to act honestly and not deliberately frustrate the purpose of the contract.

25. Plaintiff fulfilled all contractual obligations in good faith by delivering conforming medical products as promised and reasonably expected to receive payment under the Agreement.

26. Defendants, by accepting products without intent to pay on time and deliberately avoiding timely payment obligations while benefitting from Plaintiff's performance, acted in bad faith and deprived Plaintiff of the benefit of its bargain.

27. As a result of Defendants' conduct, Plaintiff suffered damages in excess of $6,553,097.32, plus interest, costs, and attorney fees.

**C. Conversion**

28. Plaintiff realleges and incorporates by reference paragraphs 1 through 27 above as though fully set forth herein. This claim is brought against Defendants Heisu, Cuesta, and Romeu.

29. Plaintiff is informed and believes, and thereon alleges, that Defendants have received and retained specific, identifiable funds from third-party payors, including Medicare and commercial insurers, in reimbursement for Plaintiff's products.

30. Defendants have refused to remit these funds or otherwise compensate Plaintiff, asserting dominion over funds that rightfully belong to Plaintiff.

31. Defendants wrongfully refused to remit those funds or otherwise compensate Plaintiff, thereby exercising dominion over Plaintiff's property in derogation of Plaintiff's rights and without lawful justification.

32. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial and seeks the return of all converted funds, together with interest, costs, and punitive damages pursuant to NRS 42.005.

**D. Fraud – Promise Without Intent to Perform**

33. Plaintiff realleges and incorporates by reference paragraphs 1 through 32 above as though fully set forth herein.

34. Plaintiff is informed and believes, and thereon alleges, that Defendants entered into the Agreement with no present intention of fulfilling their payment obligations.

35. Defendants' representation and promise to pay within forty-five (45) days of invoicing was knowingly false when made, and was intended to induce Plaintiff to ship valuable medical products.

36. Plaintiff reasonably and justifiably relied on Defendants' false promises and delivered millions of dollars in medical products in reliance thereon.

37. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff suffered damages in excess of $6,553,097.32.

38. Because Defendants acted with fraud, oppression, and malice, Plaintiff is entitled to punitive damages under NRS 42.005, plus compensatory damages, interest, and costs.

**E. Fraud in the Inducement**

39. Plaintiff realleges and incorporates by reference paragraphs 1 through 38 above as though fully set forth herein.

40. Defendants knowingly made false representations and promises to pay Plaintiff within forty-five (45) days of invoicing, with the intent to induce Plaintiff to enter into the Agreement and ship the goods.

41. Defendants never intended to perform those promises, as evidenced by their failure to make full payment.

42. Plaintiff reasonably relied on these false representations in entering into the Agreement and delivering millions of dollars in goods and suffered significant financial loss.

43. Defendants' conduct constitutes fraud in the inducement under Nevada law, and Plaintiff is entitled to compensatory damages in excess of $6,553,097.32, together with punitive damages under NRS 42.005.

**F. Promissory Estoppel**

44. Plaintiff realleges and incorporates by reference paragraphs 1 through 43 above as though fully set forth herein.

45. Defendants made a clear and definite promise to pay for medical products within forty-five (45) days of invoice for such products.

46. Plaintiff reasonably relied on this promise by shipping products of significant value to Defendants without requiring upfront payment.

47. Plaintiff's reliance resulted in substantial financial loss when Defendants failed to pay as promised.

48. It would be unjust to allow Defendants to retain the benefits of Plaintiff's performance without enforcing the promised terms.

**G. Violation of UCC – Failure to Pay for Goods (NRS 104.2102 et seq.)**

49. Plaintiff realleges and incorporates by reference paragraphs 1 through 48 above as though fully set forth herein.

50. Plaintiff and Defendant Heisu entered into a contract for the sale of goods within the meaning of Nevada's Uniform Commercial Code (NRS Chapter 104).

51. Plaintiff delivered conforming goods as agreed, and Defendants accepted the goods without objection.

52. Defendants failed to pay for the goods, in violation of NRS 104.2607(1), which requires a buyer to pay at the contract rate for goods accepted.

53. Pursuant to NRS 104.2709(1)(a), Plaintiff is entitled to recover the price of the goods accepted, together with applicable interest, costs, and any incidental damages authorized under the UCC.

**H. Account Stated**

54. Plaintiff realleges and incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

55. On or about September 19, 2025, Plaintiff issued a demand letter confirming an outstanding balance of $6,553,097.32 after crediting all prior payments, and on or about September 29, 2025, Plaintiff also sent a copy of full account statement to Defendants' counsel (the letter and the account statement, collectively, the "Statements"). A true and correct copy of the Statements is attached hereto as Exhibit 3.

56. Defendants did not object to the correctness of the balance after receiving clarification from Plaintiff and led Plaintiff to believe that payments would be forthcoming.

57. By failing to dispute the Statements, Defendants agreed to the correctness of the amount due, and an account stated was created in that principal amount, entitling Plaintiff to judgment for the unpaid balance, interest, fees, and costs.

**I. Unjust Enrichment (Pled in the Alternative)**

58. Plaintiff realleges and incorporates by reference paragraphs 1 through 57 above as though fully set forth herein.

59. In the alternative to Plaintiff's contract-based claims, Plaintiff alleges unjust enrichment. Plaintiff conferred a substantial benefit upon Defendants by delivering medical

products valued at approximately $10,000,000, with $6,553,097.32 worth of products unpaid for, yet received and used, by Defendants.

60. Defendants knowingly accepted and retained the benefit of those products without payment, despite repeated demands.

61. Under principles of equity and good conscience, Defendants' retention of the benefit without payment is unjust.

62. Plaintiff is therefore entitled to restitution in the amount of $6,767,098.18, plus interest, costs, and any other relief the Court deems just and proper.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff NEW HORIZON MEDICAL SOLUTIONS, LLC respectfully prays for judgment against Defendants HEISU RESEARCH GROUP LLC, SABRINA CUESTA (also known as SABRINA MICHELLE CUESTA OQUENDO and SABRINA MICHELLE CUESTA), and HUGO ROMEU, jointly and severally, as follows:

1.  For general damages in the principal amount of $6,553,097.32, exclusive of attorneys' fees, interest, and costs, or according to proof at trial;

2.  For attorneys' fees and costs as special damages and as provided under the indemnity provision of the parties' Agreement and applicable law;

3.  For pre-judgment and post-judgment interest, including contractual late payment charges of 1% per month, as set forth in the Agreement;

4.  For punitive damages pursuant to NRS 42.005 for Defendants' fraud, malice, and/or oppression;

5. For disgorgement of profits wrongfully obtained by Defendants from third-party payors or others as a result of the misconduct alleged herein;

6. For indemnification under Section 14 of the parties' Agreement;

7. For equitable restitution and/or damages based on unjust enrichment, if the contract is found to be unenforceable;

8. For specific performance of the Agreement, requiring Defendants to honor their contractual obligations given the unique and proprietary nature of Plaintiff's medical products, to the extent the Court finds monetary damages inadequate;

9. For such other and further relief, at law or in equity, as the Court deems just and proper.

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

DATED this 16th day of October, 2025.

Bart J. Verdirame, Esq.
Nevada Bar No. 8704
General Counsel for
New Horizon Medical Solutions, LLC
8395 W. Sunset Rd, Suite #200
Las Vegas, NV 89113
Telephone: (702) 378-6863
legal@nhmedical.com
Attorney for Plaintiff

**Exhibit 1**

Net Terms Cellular Tissue Product Agreement

Between Plaintiff and Defendants



Distributor: _____Advanced Solution_____     Name: _____Advanced Solution_____

Email: ___Support@AdvancedSolution.Health___     Cell: ___223.336.4644___

Product(s): CompleteAA & Xcell Amnio Matrix

## CUSTOMER INFORMATION

Provider Name: Hugo Romeu     Tax ID: 87-1111586

Practice Name: Heisu Research Group LLC     Practice Phone: 305-705-3475

Ship To Address: 100 NW 170TH ST Suite 105

City: North Miami Beach     State: FL     Zip: 33169

Contact Name: Sabrina Cuesta     Contact Phone: 305-705-3475

Contact Email: scuesta@heisuresearch.com     Fax: _____

How Do You Bill?

Group NPI: 1588393060     Individual NPI: _____

Bill To Address: 100 NW 170TH ST Suite 105

City: North Miami Beach     State: FL     Zip: 33169

AP Contact Name: Sabrina Cuesta     AP Phone: 305-705-3475

AP Email: scuesta@heisuresearch.com

Claims Processor Name: Dainelis Velazquez APRN

Claims Processor Phone: 3057053475

Claims Processor Email: susyc@heisuresearch.com

**EMAIL FORM TO**: contracts@nhmedical.com

Docusign Envelope ID: 285DAFA6-EEE5-496C-ABE7-EB56F3D14605



### Net Terms Cellular Tissue Product Agreement

This AGREEMENT ("Agreement") is made and entered into as of the ___30___ day of ___December___, 20_24_ ("the Effective Date") by and between New Horizon Medical Solutions, LLC ("Company"), and Heisu Research Group LLC _____ ("Customer").

Customer's Office Address: _100 NW 170TH ST Suite 105 North Miami Beach FL, 33169_

The Company and the Customer are referred to herein individually as a "Party" and collectively as the "Parties."

#### Recitals

*Whereas*, the Company is a supplier of cellular tissue products and affiliated medical products (the "Products");

*Whereas*, the Customer is a purchaser of cellular tissue products and medical products;

*Whereas*, the Customer wishes to purchase Products from the Company under the Net Terms payment program; and

*Whereas*, the Parties desire to establish the terms and conditions for the sale and purchase of Products under this Agreement.

*NOW THEREFORE, in consideration of the mutual promises contained herein, the Parties hereby agree as follows:*

**1. Term; Termination.** The Term of this Agreement shall be for a period of one (1) year from the Effective Date and will be extended only upon mutual written agreement of the Parties (such period, including all extensions, the "Term"). Either party may terminate the Agreement with or without cause, for any reason whatsoever, and at any time, by providing thirty-day (30) written notice of termination to the other party.

**2. Relationship of Parties.** The Parties hereto expressly understand and agree that Customer is an independent contractor and not an employee, and the Parties are not partners, joint venturers or otherwise affiliated. Neither Party has any right or authority to assume or create any obligations of any kind or to make any representation or warranty on behalf of the other party, whether express or implied, or to bind the other party in any respect whatsoever, except as expressly provided for hereunder. Customer shall be solely responsible for all of its employees and agents and its labor costs and expenses arising in connection with this Agreement. Company is in no manner associated with or otherwise connected with the actual performance of this Agreement

Page **1** of **10**

*Net Terms CTP Agreement* **Q125 Rev 2**

on the part of Customer, nor with Customer's employment of other persons or incurring of other expenses. Company shall have no right to exercise any control whatsoever over the activities or operations of Customer.

**3. Price.** The Customer shall purchase the Products from the Company at the prices set forth in the Company's price list in effect at the time that this Agreement is entered into, or as otherwise agreed in writing between Company and the Customer. The initial price list is set forth as Exhibit A hereto. The Company reserves the right to adjust the prices at regular intervals to reflect changes communicated by the federal payor, for the relevant Products. Any such price adjustments shall be communicated to the Customer in writing with adequate prior notice and will apply to all orders placed after the effective date of the adjustment. The Customer acknowledges and agrees that these price adjustments are necessary to align with industry standards and federal payor reimbursement policies.

**4. Payment Terms**

a. Payment. Customer agrees to remit payment to the Company for the invoiced amount based on the selected net payment terms. Please indicate your selection below:

  ☐ **Net-30:** Payment due within thirty (30) days from the date of the invoice.

  ■ **Net-45:** Payment due within forty-five (45) days from the date of the invoice.

  ☐ **Net-60:** Payment due within sixty (60) days from the date of the invoice.

  Each invoice will include the applicable price for the Products ordered, any additional fees, and any other charges or credits applied to the Customer's account as of the invoice date. Notwithstanding the foregoing, the Company reserves the right to issue interim invoices at its discretion, including for partial payments or necessary adjustments.

b. Late Payments. If payments are not received by the due date, Company reserves the right to charge a late payment fee of 1% per month (or, if lesser, the maximum amount permitted by law) on the outstanding balance. The Company reserves the right to suspend future deliveries or terminate the Agreement if the Customer fails to make timely payments.

c. Credit Approval. All orders are subject to credit approval by the Company. The Company reserves the right to withdraw or adjust payment terms based on the Customer's creditworthiness.

d. Taxes. The Customer is responsible for all applicable taxes, including sales, use, excise, or similar taxes, except those taxes based on the Company's income.

e. Explanation of Benefits. To ensure compliance with the payment terms and conditions, the Customer agrees to provide the Company with an Explanation of Benefits ("EOB") for each relevant transaction, whether the claim is approved or denied. Failure to provide the EOB may result in a delay of subsequent orders or services. In the event of non- payment for any invoiced product(s) or services, the Company reserves the right to report such

unpaid invoices to the Federal Payor. The Customer acknowledges and agrees that this reporting may include, but is not limited to, disclosure of the outstanding amounts, the nature of the product(s) or services provided, and any other necessary information to facilitate collection or compliance with applicable federal reimbursement requirements.

**5. Product Usage.** Upon receipt of the Products, Customer agrees that it and its treating physicians will utilize the Products solely for the treatment of patients as medically necessary, consistent with Product guidelines, and in accordance with applicable medical standards. Customer acknowledges and agrees that the use of the Products is subject to the sole discretion and professional medical judgment of Customer's treating providers, and Company is not and shall not be liable for the judgment of any treating provider or any results thereof.

**6. Delivery and Risk of Loss.** Delivery shall be CIP. Title and risk of loss shall pass to the Customer upon the Company's delivery to the carrier. The Customer agrees to inspect Products upon receipt for any discrepancies, defects or damages and notify the Company by email to products@nhmedical.com, within 48 hours of receipt.

**7. Return Policy.** The Company does not accept the return of Products from Customers unless they are received damaged or defective. The Customer shall not return Products without prior written approval from the Company. Any returns must comply with the Company's then-current return policies, which Company may change in its sole discretion from time to time.

**8. Compliance with Laws.** The Customer agrees to comply with all Applicable Laws in connection with its use of the Products. For purposes of this Agreement, Applicable Laws shall include, without limitation, FDA regulations, the federal Stark Law, the federal False Claims Act, the federal health care program Anti-Kickback Statute (including, without limitation, final rules published by the Department of Health and Human Services, the Office of the Inspector General ("OIG") and the Centers for Medicare and Medicaid Services ("CMS") related to each of the foregoing), the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (as amended by the Health Information Technology for Economic and Clinical Health Act of 2009), the privacy and criminal fraud provisions of HIPAA, the Physician Payments Sunshine Act, the federal Food, Drug, and Cosmetics Act ("FDCA"), the federal Public Health Service Act, the applicable requirements of Medicare, Medicaid and other government health care programs, including the Veterans Health Administration and U.S. Department of Defense health care and contracting programs, the federal civil monetary penalties statute, similar state laws, any regulations or guidance promulgated under such federal or state laws, each as may be amended from time to time.

9.   **Restrictive Covenants.** The Parties covenant and agree to the following during the twelve (12) month period immediately following the termination of this Agreement ("Restrictive Period"):

   a.   Non-Solicitation of Suppliers; Non-Circumvention. During the Restricted Period, the Customer covenants and agrees that it will not, without the prior written consent of the Company, directly or indirectly (whether as a sole proprietor, partner, stockholder, director, officer, employee or in any other capacity as principal or agent), use Company's Confidential Information (such as but not limited to supplier, manufacturer, or vendor lists

*Net Terms CTP Agreement* **Q125 Rev 2**

and contact information) to contact its suppliers, manufacturers or vendors. In addition, during the Term of this Agreement and for a period of ninety (90) days after the termination of this Agreement, Customer agrees that it shall not circumvent or bypass Company by using Company's Confidential information to do business of the nature of that being transacted in connection with this Agreement with a person or entity confidentially introduced to Customer during the Term.

b.  Non-Solicitation of Employees. During the Restricted Period, the Customer shall not, directly or indirectly, use Company's Confidential Information (such as but not limited to employees names, lists and contact information) to induce, influence, interfere, combine, or conspire with, or attempt to induce, influence, interfere, combine, or conspire with, any of the former (within past year) or current employees of, or consultants to, the Company for the purposes of terminating their employment or relationship with the Company or enabling them to compete against the Company or any future subsidiaries, parents, or affiliates of the Company.

c.  Non-Solicitation of Accounts. During the Restricted Period, the Customer shall not, directly or indirectly, use Company's Confidential Information to solicit, interfere with, or disrupt or attempt to solicit, interfere with, or disrupt any present or prospective relationship, contractual or otherwise, between the Company and any supplier, sales representative or other person or entity, or otherwise tortiously interfere with Company's contractual relationships.

d.  Reasonableness and Enforcement of Restrictions. The parties acknowledge that the covenants and agreements set forth in this Section are reasonable in all respects and are a material inducement to the Company to enter into this Agreement and that the existence and enforcement of such covenants and agreements was a material consideration to the determination of the parties' compensation under this Agreement. The parties hereby agree that any violation by the parties of the covenants contained in this Agreement shall cause irreparable damage to the Company for which the Company will have no adequate remedy at law.  In the event that the Customer breaches any of the covenants contained in this Agreement, the Customer hereby agrees and acknowledges that the Company, upon  the filing of an action in a court of competent jurisdiction in Clark County, Nevada, shall be immediately entitled to the issuance of an ex parte preliminary injunction enjoining the Customer from continuing any such breach as well as for any all damages arising from such conduct. The parties expressly acknowledge and agree, without limitation, that the Company or any successor or assign of the Company may enforce the provisions of this Agreement, including without limitation, this Section. The provisions contained in this Section (inclusive of all subsections thereof) shall survive termination of this Agreement. If the final judgment of an arbitrator or court of competent jurisdiction declares that any term or provision of this Section is invalid or unenforceable, each party agrees that the tribunal making the determination of invalidity or unenforceability shall have the power to reduce the scope, duration, or area of the term or provision, to delete specific words or phrases, or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Agreement shall be enforceable as so modified after the expiration of the time within which the judgment may be appealed.

*Net Terms CTP Agreement **Q125 Rev 2***

**10. Confidentiality; Proprietary Information.** Each Party agrees to maintain the confidentiality of any proprietary or confidential information disclosed by the other Party during the term of this Agreement. Customer acknowledges that all the rights with respect to the Products, including, but not limited to, all patents, trademarks, copyrights, service marks, trade names, technology, know how, moral rights and trade secrets, all applications for any of the foregoing, and all permits, grants and licenses or other rights relating to the Products (the "Intellectual Property Rights") are and shall remain the sole property of Company. Customer further acknowledges that Customer is  not granted any right in any such Intellectual Property Right whatsoever, except the limited right, non-exclusive right as expressly approved by Company to use such Intellectual Property Rights in the Approved Materials; provided, however, that Customer hereby acknowledges no ownership rights shall be conveyed thereby and hereby disclaims the same. Customer agrees to promptly notify Company of any infringement or alleged infringement of any Intellectual Property Right by any third party of which it becomes aware, and shall assist Company (but in  all events without cost or expense for Customer in rendering any such assistance) in protecting its rights in connection therewith. During the course of this Agreement, it may be necessary for Company to share Proprietary Information with Customer in order for Customer to seek out potential sales and Customer agrees not to disclose or otherwise reveal to any third party, or to use such Proprietary Information (defined herein), which Customer receives, observes, or otherwise obtains from Company for any purpose other than in furtherance of the duties and arrangements contemplated herein (and in no event for the benefit of any person or entity other than Company in pursuit of sales hereunder). Such confidential and/or proprietary information shall include, without limitation, information about Products, including, without limitation Intellectual Property Rights, information about Company's business plans and strategies, pricing data, industry knowledge, customer and prospective customer lists, information about Company's systems, processes and methods (including without limitation those related to proprietary billing and invoicing), and other information, materials, and/or trade secrets, regardless of form, that by its nature or markings (though it need not be marked confidential) constitutes the proprietary information of Company ("Proprietary Information"). This section remains in full force and effect even after termination of the Agreement by its natural termination or the early termination by either party. Upon termination of this Agreement, Customer will return to Company all Confidential Information, whether physical or electronic, and other items that were used, created, or controlled by Customer during the Term of this Agreement.

**11. Sales and Marketing Materials.** Customer acknowledges that Company is regulated by the FDA and is subject to specific and approved descriptive content in any and all advertising and marketing information or literature regarding Company medical devices. Customer can obtain marketing and sales literature, for its use, directly from Company, or produce its own marketing literature, provided every piece is approved in writing by Company prior to dissemination (collectively, the "Approved Materials"). Customer hereby acknowledges and agrees that Company is not responsible or liable for any information produced outside its guidelines and that Customer shall be solely and exclusively responsible and shall indemnify and hold Company harmless for Customer's use (or the use by its employees or agents) of marketing or sales materials which are not Approved Materials and any actions, claims, damages, losses, or expenses (including attorney fees) resulting therefrom or relating thereto. The foregoing indemnification shall be in addition to all other remedies under this Agreement, which shall include Company's right to immediately terminate this Agreement, without notice, and any remedies available at law and in equity. Customer further agrees that it shall not use the Company's name

*Net Terms CTP Agreement* **Q125 Rev 2**

or marks in performing its duties hereunder, as part of its' business name, or otherwise, without prior written approval from Company. Notwithstanding anything to the contrary, including, without limitation, Company's approval of Customers use of Company's name or marks, in no event shall any ownership accrue to Customer by such approval and/or use; provided, that all such ownership shall be retained by Company in all respects.

**12. Warranties and Disclaimers.** Customer acknowledges and agrees that the literature and manufacturer's documentation packaged with the Products contain all warranties, representations, and disclosures concerning the Products and their use. Customer has no authority, express or implied, to make any warranties, representations, or disclosures, nor to authorize any of its representatives to make any warranties, representations, or disclosures, beyond those provided within the Product packaging. NO WARRANTY CONCERNING THE PRODUCTS OR THE USE THEREOF IS EXTENDED TO CUSTOMER UNDER THIS AGREEMENT. WITHOUT LIMITING THE FOREGOING, COMPANY'S SOLE LIABILITY FOR BREACH OF ANY WARRANTY RELATING TO THE PRODUCTS SHALL BE, AT COMPANY'S SOLE DISCRETION, CREDIT FOR OR REPLACEMENT OF THE NONCONFORMING PRODUCT. OTHER THAN AS EXPRESSLY SET FORTH ABOVE, COMPANY DOES NOT PROVIDE ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER WITH RESPECT TO THE PRODUCTS, THE USE THEREOF, THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY, AND COMPANY EXPRESSLY DISCLAIMS ANY AND ALL OTHER REPRESENTATIONS AND WARRANTIES, WHETHER EXPRESS, IMPLIED, OR STATUTORY, INCLUDING WITHOUT LIMITATION THE WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE; WARRANTIES OF SAFETY, ACCURACY, OR NON-INFRINGEMENT; AND WARRANTIES ARISING FROM COURSE OF DEALING OR USAGE OF TRADE.

**13. Limitation of Liability for Defects.** EXCEPT FOR A BREACH OF SECTIONS 5, 8, 0R 10 OF THIS AGREEMENT AND EXCEPT AS REQUIRED BY SECTION 11 OF THIS AGREEMENT, NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY OR ANY THIRD PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES, OR LOSS OF PROFITS OR REVENUE, OR INTERRUPTION OF BUSINESS, IN ANY WAY ARISING OUT OF OR RELATED TO THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, TORT, (INCLUDING NEGLIGENCE), STRICT PRODUCT LIABILITY OR OTHERWISE, EVEN IF ANY THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. COMPANY'S MAXIMUM LIABILITY FOR ALL CLAIMS IN THE AGGREGATE ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY RELATED TO THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE PARTIES SHALL BE LIMITED TO ACTUAL DIRECT MONEY DAMAGES ONLY AND SHALL NOT EXCEED THE LESSER OF THE AMOUNTS PAID BY CUSTOMER TO COMPANY HEREUNDER OR THE FEES PAID BY CUSTOMER TO COMPANY DURING THE THREE (3) MONTH PERIOD IMMEDIATELY PRECEDING THE EARLIEST DATE ON WHICH THE EVENT GIVING RISE TO THE LIABILITY OCCURRED.

**14. Indemnification.** Indemnification. Each party (each an "Indemnifying Party") shall indemnify, defend and hold harmless the other party and its officers, directors, employees and agents (each an "Indemnified Party") for any liabilities, losses, damages, costs, fees and expenses (including reasonable attorneys' fees) (collectively, "Losses") payable or owed by such Indemnified Party in

connection with any third party claims, suits, actions, investigations, or proceedings (each, a "Claim") arising or resulting from: (a) any representation or warranty made by an Indemnifying Party that is inconsistent its obligations hereunder; or (b) the breach by Indemnifying Party of a representation, warranty, or covenant of this Agreement; provided, that such indemnity shall not apply to the extent that it is shown that the Claim or Loss was the result of the gross negligence or willful misconduct any Indemnified Party.

In addition to the indemnification obligations above, Customer shall indemnify, defend, and hold harmless Company, its subsidiaries and affiliates, and each of their respective officers, directors, owners (including shareholders), managers, members, employees, and agents from and against any Losses or Claims arising out of, in connection with or in any way related to:

a) Customer's, Customer's physicians, or any other of Customer's employees' or agents' negligence, gross negligence, recklessness or willful misconduct;
b) Customer's, Customer's physicians, or any other of Customer's employees' or agents' failure to comply with industry standards;
c) Customer's, Customer's physicians, or any other of Customer's employees' or agents' services provided to a patient or other third party;
d) Customer's failure to comply with or adhere to Company's policies or Customer's regulatory compliance obligations;
e) Customer's failure to obtain necessary licenses or permits;
f) Customer's failure to comply with Applicable Laws; and
g) Customer's breach of this Agreement.

**15. Compliance.** Compliance. The purpose of the Agreement is to enter into a commercially reasonable and fair market value arrangement. The Parties in good faith believe that this Agreement fully complies with Applicable Laws including without limitation the provisions of 42 U.S.C. 1320a-7b (the Medicare/Medicaid "Anti-Kickback Statute"). Neither Company nor Customer are, by virtue of this Agreement or otherwise, willfully offering, paying, soliciting, or receiving remuneration in return for referring an individual to or from each other for the furnishing of any item or service reimbursed under the Medicare or other federal or state health care programs. Pricing hereunder will not change based on the volume or value of any referrals or business otherwise generated between the parties for which payment may be made in whole or in part under Medicare or a state health care program. The parties shall comply with the reporting requirements of 42 C.F.R. §1001.952(h), regarding "safe harbor" protection for discounts under the Anti- Kickback Statute.  In addition, Customer shall conduct itself in accordance with the highest standards of business and professional ethics and industry best practices, including best practices set forth in industry codes of ethics. Customer understands and acknowledges that Customer is prohibited from providing any payment or any other thing of value to any Person as an inducement to use Products.

**16. Miscellaneous.**

a. Notices. All notices provided for in this Agreement shall be directed to the parties at their addresses listed in the signature block of this Agreement or at such other address as such party will have specified in a notice given in accordance with this section, and shall be deemed to have been given: (i) five (5) business days after the date of mailing if sent by

*Net Terms CTP Agreement **Q125 Rev 2***

registered or certified U.S. mail, postage prepaid, with return receipt requested; (ii) when transmitted if sent by email, confirmed by evidence of email delivery confirmation; or (iii) when delivered if delivered personally or sent by express courier service (such as but not limited to overnight or two-day delivery via Federal Express, UPS or other similar express courier service). All notices will be sent to the other party at its address as set forth beneath the signature block of this Agreement. In the event of notices to Company, a copy of all notices shall also be sent to the Legal Department at legal@nhmedical.com.

b.  Entire Agreement. This Agreement constitutes a single, integrated, written contract expressing the entire understanding and agreement between the Parties, and the terms of the Agreement are contractual and not merely recitals. There is no other agreement, written or oral, expressed or implied between the Parties with respect to the subject matter of this Agreement and the Parties declare and represent that no promise, inducement, or other agreement not expressly contained in this Agreement has been made conferring any benefit upon them or upon which they have relied in any way. All prior and contemporaneous discussions, writings and negotiations have been and are merged into and superseded by this Agreement. The terms and conditions of this Agreement may not be contradicted by evidence of any prior or contemporaneous agreement, and no extrinsic evidence may be introduced in any judicial proceeding to interpret this Agreement.

c.  Further Assurances; Regulatory Compliance. Each Party shall execute and cause to be delivered to the other Party such instruments and other documents, and shall take such other actions, as the other Party may reasonably request for the purpose of carrying out or evidencing any of the transactions contemplated by this Agreement, including, without limitation, to amend this Agreement to comply with Applicable Law as set forth herein. It is the intent of the Parties that this Agreement comply with Applicable Law, however, each Party acknowledges that such Applicable Law is complicated and in a state of flux. Therefore in the event that any provision of this Agreement is rendered invalid or unenforceable by a court of competent jurisdiction, or the applicable laws and regulations are altered by any legislative or regulatory body, or either party notifies the other party in writing of its reasonable belief that this Agreement or any of its provisions may be declared null, void, unenforceable, or in violation of Applicable Law, and such party is in fact correct as to such conclusion, the remaining provisions, if any, of this Agreement shall nevertheless continue in full force and effect; provided, however, that thereupon either party may without prior notice terminate the engagement provided for hereunder, except to the extent that such modification to the Agreement would be made as a result of one party's assertion of its reasonable belief, in which event only the other such party shall have such right of termination under this Section 16(c).

d.  Governing Law; Jurisdiction; Waiver Of Jury Trial. This Agreement shall be construed under the laws of the State of Nevada, without regard to any conflict of law principles. Any dispute arising between the Parties shall be subject to jurisdiction exclusively in courts located in Clark County, Nevada and the parties hereby submit to the jurisdiction of such courts and waive objection thereto. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR

*Net Terms CTP Agreement* **Q125 Rev 2**

OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE ACTIONS OF THE PURCHASER OR THE COMPANY IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE AND ENFORCEMENT HEREOF.

e.  Legal Fees. If any legal action is necessary to enforce the terms and conditions of this Agreement, the prevailing party may recover all costs of suit and reasonable attorneys' fees.

f.  Amendment. No amendment, modification, addendum, or revision to this Agreement shall be valid, unless it is in writing and signed by all of the Parties to this Agreement.

g.  Severability. If any part of this Agreement shall be determined to be illegal, invalid, or unenforceable, that part shall be severed from this Agreement and the remaining parts shall be valid and enforceable, so long as the remaining parts continue to fulfill the original intent of the Parties.

h.  No Implied Waivers. The failure of either party at any time to acquire performance by the other party of any provision hereof shall not affect in any way the full right to require such performance at any time thereafter. Nor shall the waiver by either party of a breach of any provision hereof be taken or held to be a waiver of the provision itself. The waiver of any default or breach of this Agreement shall not be construed as a waiver of any subsequent breach.

i.  Successors; Assignability. This Agreement shall be binding upon, and shall inure to the benefit of, the successors and assigns of the parties to the extent that this Agreement is assignable. This Agreement is not assignable by either party without the express written consent of the other party; provided, however, Company shall have the right to assign this Agreement in its sole and absolute discretion, whether by operation of law, or otherwise, without consent, including without limitation assigning this Agreement to an entity controlling, controlled by, under common control with or otherwise affiliated with Company.

j.  No Strict Construction. The parties hereto agree that they have been represented by, or had the opportunity to retain, counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, holding or rule of construction providing that ambiguities in an agreement or other document will be construed against the party drafting such agreement or document.

k.  Counterparts. This Agreement may be executed and delivered (including by facsimile or electronic transmission) in any number of counterparts, and by the different parties hereto in separate counterparts, each of which when executed shall be deemed an original, but all of which taken together shall constitute a single instrument.

l.  Electronic Communications and Signatures; Customer Representations and Warranties. Customer agrees to the use of electronic communication in order to enter into agreements

*Net Terms CTP Agreement **Q125 Rev 2***

Docusign Envelope ID: 285DAFA6-EEE5-496C-ABE7-EB56F3D14605

and place orders, and to the electronic delivery of notices, policies and records of transactions. Furthermore, Customer hereby waives any rights or requirements under any laws or regulations in any jurisdiction that require an original (non-electronic) signature or delivery or retention of non-electronic records, to the extent permitted under applicable law.  By signing below, Customer agrees to transact business with Company electronically by electronically signing or by otherwise electronically accepting agreements and terms from Company. Customer and signatory represent and warrant that (i) the signatory has the authority to accept this Agreement on behalf of Customer, (ii) the signatory is more than 18 years of age, and (iii) neither the Customer nor the signatory is listed on any U.S. Government list of prohibited or restricted parties or is on any other list barring them from doing business contemplated by this Agreement.

Executed as of the Effective Date.

**New Horizon Medical Solutions, LLC:**

Name: Stuart Porteous

Signature: _____

Title: Chief Process Officer

Date: 12/31/2024 | 12:20 PM EST

**Customer:**

Name: Sabrina Cuesta

Signature: Sabrina Cuesta

Title: CEO

Company: Heisu Research Group LLC

*Net Terms CTP Agreement **Q125 Rev 2***



## Exhibit A

| Q Code | Cellular Tissue Product (CTP) | CTP ASP | CTP Price |
|---|---|---|---|
| Q 4303 | Complete AA | $3412.76 per 1 SqCm | ASP less 30 % |
| Q 4280 | Xcell Amnio Matrix | $2060.40 per 1 SqCm | ASP less 30 % |
| | | | ASP less _____ % |
| | | | ASP less _____ % |
| | | | ASP less _____ % |

- New Horizon Medical Solutions, LLC ("Company") is the provider of cellular tissue and affiliated medical products ("Products"). The fees payable by the Customer to Company shall include both the management fee for services provided by the Company and the cost of the Products. The total amount invoiced by the Company will reflect these combined charges.

- In the event that reimbursement is denied by the federal payor, the Company agrees to cover the full cost of the Products, provided that the Customer has complied with all applicable contractual and regulatory requirements for obtaining pre-authorization, submitting appeals, and adhering to billing procedures, as stipulated by our Federal Payor Refund Program and Policy included within. This reimbursement obligation is contingent upon the Customer's fulfillment of all obligations related to the submission of timely and accurate claims, appeals, and supporting documentation as required under the relevant federal payor policies. Any failure to comply with such policies or deadlines may void NHMS reimbursement commitment, if applicable.

**New Horizon Medical Solutions, LLC:**

Name: Stuart Porteous

Signature: _____

Title: Chief Process Officer

Date: 12/31/2024 | 12:20 PM EST

**Customer:**

Name: Sabrina Cuesta

Signature: Sabrina Cuesta

Title: CEO

Company: Heisu Research Group LLC

Date: 12/30/2024 | 2:56 PM PST

*Exhibit A – Net-Terms CTP Agreement_Q125 Rev1*



## CREDIT CARD AUTHORIZATION FORM

Please sign and complete this form to authorize New Horizon Medical Solutions, LLC ("Company") to charge the credit card listed below for the supply of Cellular Tissue Products ("Products"). By signing this form, you authorize the Company to charge your credit card based on the payment terms selected in your agreement.

**Please check the box below to indicate your selected payment terms:**

☐ **Net-30 Terms:** Charges applied 30 days after Product shipment

☒ **Net-45 Terms:** Charges applied 45 days after Product shipment

☐ **Net-60 Terms:** Charges applied 60 days after Product shipment


### CREDIT CARD INFORMATION

Provider Name: _____

Credit Card Type:      ☐ American Express      ☐ Visa      ☐ MasterCard

Credit Card Number: _____

Expiration Date: _____ CVV: _____

Email: _____

Signature: _Sabrina Cuesta_____ Date: _____

I authorize the Company to charge the credit card provided in this authorization form in accordance with the terms specified above. This authorization applies to the goods and/or services described in this document. I certify that I am an authorized user of the credit card and agree not to dispute the authorized payments with my credit card issuer, provided the charges comply with the terms outlined in this form.



**NEW HORIZON**
MEDICAL SOLUTIONS

### Federal Payor Refund Program and Policy

**1. Purpose.** New Horizon Medical Solutions, LLC ("Company") is committed to maintaining compliance with federal and state regulations while ensuring that our Customers receive fair and equitable treatment. This Refund Program and Policy (the "Refund Program") outlines the conditions under which refunds are issued for cellular tissue products provided by Company

**2. Eligibility for Refunds or Statement Credits.** Refunds may be issued under the following conditions:

- Scope Limitation: The Refund Program applies only to treatments that are medically necessary and meet the conditions of coverage in Local Coverage Determination ("LCD") L35041 or the relevant LCD applicable in the client's geographic region. If there is no applicable LCD in the client's geographic region, then treatment must be consistent with LCD L35041. The Refund Program applies to adverse payment decisions, which includes initial reimbursement denials and/or subsequent recoupment actions. No refund is available for partial reimbursement denials.
- Time Limitation: No refund will be issued unless Customer appeals an adverse payment decision. Customer must apply for a refund under the Refund Program within 180 days of an adverse payment decision on a first level appeal to the Federal Payor.
- Federal Payor Limitation: The Refund Program applies to claims submitted to Federal health care programs, as that term is defined in 42 U.S.C. § 1320a-7b(f).
- Refund Scope: Refunds are limited to the purchase price of the services or products provided by Company. No refund will be issued for any patient care expenses (e.g., medical, surgical, or hospital expenses) or any other costs incurred by the Customer related to the services.

**3. Refund Request Procedure.** Customer ~~Clients~~ may request a refund by following these steps:

- Submit a written request detailing the reason for the refund and any supporting documentation. Customer ~~Clients~~ must submit written proof from the Federal Payor ~~payor~~ that a claim for reimbursement was denied in full, and that decision was appealed and upheld.
- Send the request via email to admin@nhmedical.com or tracked mail it to:
  New Horizon Medical Solutions
  8395 W Sunset Rd
  Ste. 200
  Las Vegas, NV 89113

**4. Reporting and Compliance Obligations.** As a condition of participation in the Refund Program, each Customer must:

- Report the Refund or Statement Credit: Report the existence of the Refund Program on invoices and report any refunds or statement credits to the appropriate Federal Payor and secondary insurer.
- Adjustments: Return any collected deductibles and copayments to the patient, and/or adjust the statement submitted to the Federal Payor or any secondary insurer to reflect the return of any collected cost-sharing amounts.

*Federal Payor Refund Policy* **Q125 Rev1**

- Information Provision: Provide all information related to the Refund Program to federal and state healthcare officials upon request.

**5. Review and Approval Process.** Upon receipt of a refund request, Company will review the request and supporting documentation.
- The review process will be completed within 30 days of receiving the refund or statement credit request.
- Customer will be notified in writing via tracked mail of the approval or denial of their refund or statement credit request.

**6. Issuance of Refunds.**
- Approved refunds will be processed and issued within thirty (30) days of approval.
- Refunds will be issued via the original payment method, unless otherwise agreed upon.
- Once a refund is processed, Customer may elect to receive a refund or statement credit.

**7. Compliance with Federal and State Regulations.** Company will adhere to all applicable federal and state laws and regulations regarding refunds and billing practices. This policy is designed to prevent any potential conflicts with anti-kickback statutes or other regulatory requirements.

**8. Contact Information.** For questions or further assistance regarding this Refund Program and Policy, please contact our office at admin@nhmedical.com or 702.960.2913.

**9. Amendments.** Company reserves the right to amend this Refund Program and Policy as necessary to ensure continued compliance with legal and regulatory requirements. This Refund Program and Policy is designed to incorporate necessary safeguards to reduce the risk of fraud and abuse, ensuring transparency, fairness, and compliance with relevant regulations.

**New Horizon Medical Solutions, LLC:**

Name: _____Stuart Porteous_____    Signature: _____

Title: _____Chief Process Officer_____    Date: _____12/31/2024 | 12:20 PM EST_____

**Customer**

Name: _____Sabrina Cuesta_____    Signature: _Sabrina Cuesta_____

Title: _____CEO_____    Company: _____Heisu Research Group LLC_____

Date: _____12/30/2024 | 2:56 PM PST_____

**Page 2 of 2**

*Federal Payor Refund Policy* **Q125 Rev1**



**Business Associate Agreement**

Heisu Research Group LLC ("Covered Entity") and **New Horizon Medical Solutions, LLC** ("Business Associate") hereby enter into this Business Associate Agreement (this "BAA"), effective as of the date beneath Covered Entity's signature on the signature page of this BAA (the "Effective Date"), which is hereby made a part of the contractual agreements existing between them (or entered into in the future) pursuant to which Covered Entity discloses or provides Protected Health Information to Business Associate (the "Contractual Agreements"). In connection with the services which Business Associate provides to Covered Entity under the Contractual Agreements, Covered Entity plans to disclose or provide access to Protected Health Information to Business Associate that is subject to certain restrictions and obligations pursuant to the Health Insurance Portability and Accountability Act of 1996, as amended, and its implementing regulations (45 C.F.R. Parts 160-64) ("HIPAA"), and the Health Information Technology for Economic and Clinical Health Act, Division A of Title XIII of the American Recovery and Reinvestment Act of 2009 (the "HITECH Act"). Covered Entity and Business Associate agree to enter this BAA to address the obligations and restrictions of Business Associate in connection with its access, creation, use, disclosure and destruction of Protected Health Information.

## 1.   Definitions

<u>Catch-all definition</u>: The following terms used in this BAA shall have the same meaning as those terms in the HIPAA Rules: Breach, Data Aggregation, Designated Record Set, Disclosure, Health Care Operations, Individual, Minimum Necessary, Notice of Privacy Practices, Protected Health Information, Required By Law, Secretary, Security Incident, Subcontractor, Unsecured Protected Health Information, and Use.

<u>Specific definitions</u>:

(a) <u>Business Associate</u>. "Business Associate" shall have the same meaning as the term "business associate" at 45 CFR 160.103, and in reference to the party to this BAA, shall mean New Horizon Medical Solutions, LLC.

(b) <u>Covered Entity</u>. "Covered Entity" shall have the same meaning as the term "covered entity" at 45 CFR 160.103, and in reference to the party to this BAA, shall mean the Customer named in the signature block of this BAA.

(c) <u>HIPAA Rules</u>. "HIPAA Rules" shall mean the Privacy, Security, Breach Notification, and Enforcement Rules at 45 CFR Part 160 and Part 164.

*NHMS BAA **Q125***

## 2. Obligations and Activities of Business Associate

Business Associate agrees to:

(a) Neither use nor disclose Protected Health Information other than as permitted or required by this BAA or the Contractual Agreements or as required by law (Covered Entity represents and warrants that it has obtained any and all licenses, approvals and consents required to use, disclose to Business Associate or otherwise make available to Business Associate Protected Health Information);

(b) Use appropriate safeguards and comply with Subpart C of 45 CFR Part 164 with respect to electronic Protected Health Information ("PHI") to prevent use or disclosure of Protected Health Information other than as provided for by this BAA.

(c) Report to Covered Entity any use or disclosure of PHI not provided for by this BAA of which it becomes aware, including breaches of unsecured PHI as required at 45 CFR 164.410, and any security incident of which it becomes aware, within thirty (30) days of discovery (mere reporting of any such breaches does not constitute or impose on Business Associate liability for any such breaches); Business Associate may, but is not obligated to, perform its own risk assessment, pursuant to 45 CFR 164.402; however, nothing herein provided is intended to relieve Covered Entity of any of its obligations pursuant to the HIPAA Breach Notification Rule;

(d) In accordance with 45 CFR 164.502(e)(1)(ii) and 164.308(b)(2), if applicable, ensure that any subcontractors that create, receive, maintain, or transmit PHI on behalf of the Business Associate agree to the same restrictions, conditions, and requirements that apply to the Business Associate with respect to such agreements before any PHI is disclosed or made accessible

(e) Make available PHI in a designated record set to the Covered Entity as necessary to satisfy Covered Entity's obligations under 45 CFR 164.524 within thirty (30) days of receiving a written request.

(f) Make any amendment(s) to PHI in a designated record set as directed or agreed to by the Covered Entity pursuant or take other measures as necessary to satisfy Covered Entity's obligations under 45 CFR 164.526, within sixty (60) days of receiving a written request;

(g) Maintain and make available the information required to provide an accounting of disclosures to the Covered Entity as necessary to satisfy Covered Entity's obligations under 45 CFR 164.528

(h) To the extent the Business Associate is to conduct one or more of Covered Entity's obligation(s) under Subpart E of 45 CFR Part 164, comply with the requirements of Subpart E that apply to the Covered Entity in the performance of such obligation(s); and

(i) Make its internal practices, books, and records available to the Secretary of the U.S. Department of Health and Human Services (HHS) for purposes of determining compliance with the HIPAA Rules, promptly upon receiving a written request from the Secretary.

(j) In the event Business Associate receives requests directly from an individual regarding his/her PHI, Business Associate as a courtesy may, but is not required to, provide responses and notices directly

*NHMS BAA* **Q125**

to the individual; however, nothing herein is intended to relieve Covered Entity of any of its obligations and liabilities under the HIPAA Breach Notification Rule or Contractual Agreements.

(k) Both parties agree to comply with the prohibition on using or disclosing PHI to investigate, impose liability, or penalize any individual, entity, or provider for seeking, obtaining, providing, or facilitating reproductive health care. Any such uses or disclosures must comply with applicable laws, including the HIPAA Privacy Rule. Furthermore, any requester of PHI related to reproductive health care must provide a signed attestation confirming that the purpose of the request does not violate the prohibitions outlined under the HIPAA Rules.

## 3.  Permitted Uses and Disclosures by Business Associate

(a) Business Associate may make all uses or disclosures of Protected Health Information as set forth in the Contractual Agreements and as necessary to perform the services set forth in this BAA and the Contractual Agreements.

(b) Business Associate may use or disclose Protected Health Information as required by law. Business Associate shall notify Covered Entity of any such disclosure required by law within ten (10) days after the later of such use or disclosure or becoming aware of the requirement, unless prohibited by law.

(c) Business Associate agrees to make uses and disclosures and requests for Protected Health Information consistent with Covered Entity's policies and procedures provided in writing by Covered Entity to Business Associate in accordance with Covered Entity requirements in this BAA. Business Associate shall implement these policies as soon as commercially practicable after receipt.

(d) Business Associate may not use or disclose Protected Health Information in a manner that would violate Subpart E of 45 CFR Part 164 if done by Covered Entity except for the specific uses and disclosures set forth below (Covered Entity represent and warrants that it has obtained any and all licenses, approvals and consents required to use, disclose to Business Associate or otherwise make available to Business Associate Protected Health Information).

(e) Business Associate may use or disclose Protected Health Information for the proper management and administration of the Business Associate or to fulfill the legal responsibilities of the Business Associate. Such disclosures must be documented and made available to the Covered Entity upon request in a timely manner

(f) Business Associate may de-identify PHI obtained by Business Associate under this BAA and the Contractual Agreements and use such de-identified data. Business Associate shall ensure that de-identification is performed in accordance with 45 CFR § 164.514 and provide a summary of the de-identification process to Covered Entity upon request in a timely manner

(g) Business Associate may provide data aggregation services relating to the health care operations of the Covered Entity.

## 4.  Provisions for Covered Entity to Inform Business Associate of Privacy Practices and Restrictions

*NHMS BAA* **Q125**

Covered Entity shall notify Business Associate of any limitation(s) in the notice of privacy practices of Covered Entity under 45 CFR § 164.520, to the extent that such limitation may affect Business Associate's use or disclosure of Protected Health Information. Such notification shall be provided promptly upon the Covered Entity becoming aware of the limitation.

Covered Entity also shall notify Business Associate of any changes in, or revocation of, permission by an individual to use or disclose Protected Health Information, to the extent that such changes may affect Business Associate's use or disclosure of Protected Health Information. Such notification shall be provided promptly upon the Covered Entity being informed of the change or revocation.

Covered Entity shall notify Business Associate of any restriction to the use or disclosure of Protected Health Information that Covered Entity has agreed to in accordance with 45 CFR § 164.522, to the extent that such restriction may affect Business Associate's use or disclosure of Protected Health Information. Such notification shall be provided promptly upon the Covered Entity agreeing to the restriction.

## 5.  Permissible Requests by Covered Entity

Covered Entity shall not request Business Associate to use or disclose Protected Health Information in any manner that would not be permissible under Subpart E of 45 CFR Part 164 if done by Covered Entity or any in any manner that would violate this BAA, the Contractual Agreements, or the HIPAA Rules.

Covered Entity may make a request to Business Associate to provide information regarding Business Associate's Security Officer and general assurance of the use of appropriate safeguards with respect to PHI, once per calendar year. Business Associate will provide the requested information and assurance in a timely manner and to the extent and in the manner deemed necessary and appropriate by Business Associate. Covered Entity agrees to be responsible for the costs, fees, and expenses associated with any such provision of information to Covered Entity.

## 6.  Indemnification

Each party shall indemnify and hold harmless the other party and its officers, employees, agents, and instrumentalities (the indemnified parties) from any and all liability, losses or damages, including attorneys' fees and costs of defense, which the indemnified party  or its officers,  employees, agents or instrumentalities may incur as a result of claims, demands, suits, causes of actions or proceedings of any kind or nature arising out of, relating to, or resulting from the performance of this Agreement by a party or its employees, agents, servants, partners, principals, or subcontractors. The indemnifying party shall be given prompt written notice of any such claim and shall have the right to control the defense and settlement of such claim, provided that the indemnified party may participate in such defense with counsel of its choosing at its own expense.

## 7.  Term and Termination

(a) <u>Term</u>. The Term of this BAA shall be effective as of the Effective Date and shall terminate on the date set out in the Contractual Agreements, if applicable, between the parties as that date may be

modified from time to time, or on the date Covered Entity terminates for cause as authorized in paragraph (b) of this Section, whichever is sooner.

(b) <u>Termination for Cause</u>. Business Associate authorizes termination of this BAA by Covered Entity upon sixty (60) calendar days' written notice, if Covered Entity determines Business Associate has violated a material term of this BAA and Business Associate has not cured the breach or ended the violation within the time specified by Covered Entity. In the event of such termination by Covered Entity, Business Associate may terminate the Contractual Agreements if it determines it is necessary or advisable to remain compliant with HIPAA requirements. If Business Associate determines that Covered Entity has breached a material term of this BAA or that the condition of performance under this BAA has so changed that Business Associate determines it is not practicable or possible to comply with the new condition, Business Associate may terminate this BAA and any related Contractual Agreements upon sixty (60) calendar days' written notice.

(c) <u>Obligations of Business Associate upon Termination</u>. Business Associate shall, unless a longer period is required by applicable law or Business Associate's policies, retain Protected Health Information received from Covered Entity for a period of not more than sixty (60) days from date of termination of this BAA for whatever cause, or for such other period during which Covered Entity and Business Associate shall have made provision for return or authorized destruction of all PHI, except as otherwise set forth in this section. Thereafter, Business Associate shall return or destroy all PHI Business Associate still maintains in any form. Notwithstanding the foregoing, in the event that Business Associate determines that returning or destroying the PHI or a subset thereof is not feasible or practicable, Business Associate shall to the extent commercially practicable provide to Covered Entity notification of the conditions that make the return or destruction infeasible or not practicable, and, for so long as Business Associate maintains such PHI, Business Associate shall extend the protections of this BAA to such PHI and limit further uses and disclosures of such PHI to those purposes that make the return or destruction infeasible or not practicable. Covered Entity is solely responsible for complying with all laws and regulations related to retention of medical records, patient access and authorization to use, disclose and release patient data. Without limiting the foregoing, Covered Entity represents and warrants that it has obtained all licenses, approvals and consents required to use, disclose to Business Associate, or otherwise make available to Business Associate Protected Health Information. All costs, fees, and expenses associated with the return or migration of information or data subject to this Business Associate Agreement or the Contractual Agreements shall be paid by Covered Entity or reimbursed by Covered Entity.

(d) <u>Survival</u>. The obligations of Business Associate under this Section shall survive the termination of this BAA.

## 8. General Provisions

(a) Upon the effective date of any applicable final regulation or applicable amendment to final regulations promulgated by the Department of Health and Human Services, this BAA and Contractual Agreements of which it is part will automatically be deemed to have been amended so that the parties may remain in compliance with the regulations.

(b) The parties acknowledge and agree that this BAA will be deemed to have been jointly prepared by the parties and their respective legal counsel and will not be strictly construed against either party.

*NHMS BAA* **Q125**

(c) Except as otherwise provided herein, the terms and conditions of this BAA will override and control any conflicting term or condition expressly stated in the Contractual Agreements between Covered Entity and Business Associate. All non-conflicting terms and conditions of such Contractual Agreements (including without limitation those related to customer data and security, warranties, disclaimers, indemnification, and limitations of liability) will remain in full force and effect.

(d) Any ambiguity in this BAA shall be resolved in favor of an interpretation that allows Covered Entity to comply with HIPAA or its Business Associate Agreement with its client.

(e) This Business Associate Agreement shall be governed in all respects by the laws of the state of Nevada. The parties hereby consent to the exercise of exclusive jurisdiction in the County of Clark, State of Nevada for any claim relating to the enforcement of, or any rights under, this BAA.

(f) This BAA may be modified or amended by Business Associate upon thirty (30) calendar days' written notice to Covered Entity. Such amendments shall: (i) be made solely to comply with applicable laws, regulations, or contractual obligations; (ii) specify the provisions being modified; and (iii) include an effective date, which shall be no less than thirty (30) calendar days from the date of notice, unless an earlier effective date is required by law.

IN WITNESS WHEREOF, the parties hereto have executed this BAA as of the Effective Date.

**Business Associate:**

**New Horizon Medical Solutions, LLC**

Signature: _____

Print Name: _____Stuart Porteous_____

Title: _____Chief Process Officer_____

Address: 8395 W. Sunset Road, Suite 210
Las Vegas, Nevada 89113
Email: legal@nhmedical.com

**Covered Entity:**

Entity Name: Heisu Research Group LLC

Signature: _____Sabrina Cuesta_____

Print Name: _____Sabrina Cuesta_____

Title: _____CEO_____

Address: _____100 NW 170TH ST SUITE 105_____

_____North Miami Beach FL, 33169_____

Email: _____scuesta@heisuresearch.com_____

Date: _____12/30/2024 | 2:56 PM PST_____

*NHMS BAA* **Q125**

**Exhibit 2**

Demand Letters and Emails from Plaintiff to Defendants dated

September 19, 2025 and October 14, 2025

**New Horizon Medical Solutions**
8395 W. Sunset Road, Suite 200
Las Vegas, NV 89113
Tel: 702-960-2913

**www.nhmedical.com**

September 19, 2025

**SENT VIA EMAIL:**
Heisu Research Group LLC
scuesta@heisuresearch.com and contactus@heisuresearch.com

**DEMAND FOR PAYMENT OF $6,553,097.32**

Dear Ms. Cuesta:

As you are aware, on December 30, 2024, you entered into a contract with New Horizon Medical Solutions to purchase some of our medical products (the "Agreement"). Pursuant to the terms of the Agreement, payment is due within fourteen (14) days of your receipt of reimbursement from the applicable Federal Payor for the related patient claim.

To date, payment in the amount of **$6,553,097.32** remains outstanding. In accordance with the terms of our Agreement, a late payment fee of 1% per month may be applied to any unpaid balance beyond the due date.

You are hereby given *five (5) business days* from the date of this notice to remit full payment of the outstanding balance. Failure to do so will result in New Horizon Medical Solutions pursuing legal remedies, including but not limited to collection of the amount owed and recovery of all associated legal costs.

In addition, if you are ordering or planning to order additional products, please note that your account is on hold, and shipments are being suspended, pending your compliance with the Agreement including our receipt of full payment.

Please note that any discount, or your decision to forego payment to New Horizons Medical Solutions resulting in "free product", triggers reporting obligations for adherence to the Federal Anti-kickback Statute Discount Safe Harbor (42 C.F.R. § 1001.952(h)). We provided net invoices for the products reflecting the discounts provided and expect the products to be paid as invoiced. To forego payment creates compliance concerns about your billing payors for unpaid products. Specifically, any such free (or discounted) product should be reported to Medicare, Medicaid, commercial, and/or other federal or private payers. Further, as the facility billing for these procedures, you are solely responsible for accurately reporting discounts and providing appropriate claim notification to the payer that the facility fee has been reduced because your facility did not incur the cost of our product.

Your failure to pay also triggers reporting obligations under the National Physician Payment Transparency Program (Open Payments), a.k.a. "Sunshine Act", which is a federal law that

**New Horizon Medical Solutions**
8395 W. Sunset Road, Suite 200
Las Vegas, NV 89113
Tel: 702-960-2913

www.nhmedical.com

requires medical product companies to report to the federal government certain payments and other transfers of value that they make to physicians, either directly or indirectly to entities they have an interest in. This includes debt forgiveness, so any non-payment of amounts owed will be reported by us, and as such would be made available the HHS Office of Inspector General and the public at large on the Centers for Medicare and Medicaid Services Open Payments (Sunshine) website.

Finally, to the extent any billing information has been submitted which included documentation (such as an invoice) which indicates New Horizons Medical Solutions products were paid for when you are foregoing payment, you may want to contact your legal counsel to consider whether this may violate federal or state laws, or private insurance policies.  For example, the False Statements Accountability Act of 1996, 18 U.S.C. § 1001, makes it a crime to knowingly and willfully make false statements to the federal government.  Other federal laws, state laws, and policies of major insurers may be implicated as well given the windfall created by foregoing payment.

Should you have any questions or wish to discuss this matter further, please contact me at 702-378-6863 at your earliest convenience.

Sincerely,

Bart J. Verdirame
General Counsel

 Outlook

**Re: AOC Health Care and Heisu research**

**From** Bart Verdirame <bart.verdirame@nhmedical.com>
**Date** Tue 10/14/2025 2:59 PM
**To** Philip Reizenstein <phil@reizensteinlaw.com>; Peter Ariz <pariz@arizlawpa.com>
**Cc** New Horizon Legal <Legal@nhmedical.com>

Phil, it's been 20 days since you first indicated you represent Heisu Research and AOC Healthcare, and since then neither your clients nor your offices have provided us anything to work with.  We'll be filing suits this week, as it is clear your clients have no intention of making payment. I find it hard to believe that Heisu is delinquent on over $6.5M in payments, all of which are over 90 days past due, has not made a single payment in over 4 months, and has not made any progress at all since receiving a demand letter and engaging counsel.  Same for AOC, except the amounts involved are around $1.4M and it's been more than 5 months since last payment.  We have delayed filing in court thus far, solely at my direction as a professional courtesy to you and your offices, but my CFO, the rest of the executive team, and I myself have lost patience. I cannot go back to my Board and CEO again with no information on where these accounts stand.

**Bart J. Verdirame**
General Counsel
**www.nhmedical.com**

**E:** bart.verdirame@nhmedical.com
**C:** 702.807.3380  |  **O:** 702.378.6863
**A:** 8395 W Sunset Rd #200, Las Vegas, NV 89113

**From:** Philip Reizenstein <phil@reizensteinlaw.com>
**Sent:** Friday, October 10, 2025 1:08 PM
**To:** Bart Verdirame <bart.verdirame@nhmedical.com>; Peter Ariz <pariz@arizlawpa.com>
**Subject:** AOC Health Care and Heisu research

Good afternoon Bart.
We have met and spoken with the two companies that you and I spoke with. I know Heisu research is actively reviewing the documents today, and expect both companies will have an update for us to communicate to you shortly. I know both want to avoid litigation.
I could not respond to calls to my office yesterday (Thursday) as I was undergoing a long planned series of medical tests and was just not available to answer calls or emails.
Whatever additional patience your clients may have, and I understand we are talking about large sums of money, it may make matters easier to resolve. I have asked my

clients to quickly get back to us. Attorney Peter Ariz is on this email chain with me. Phil

--



**Phil Reizenstein**

305-444-0755  |  www.reizensteinlaw.com
2828 Coral Way Suite 540 Miami, FL, 33145

   

This email is covered by attorney–client privilege and the work product privilege. If you are not the intended recipient of this email do not read this email. This transmission is intended to be delivered to and read by the named addressee(s) only, and may contain information that is confidential, proprietary, attorney work-product or attorney-client privileged.  If this information is received by anyone other than the named addressee(s), Under no circumstances shall this material be read, used, copied, reproduced, stored or retained by anyone other that the named addressee(s) except with the express and actual consent of the sender.

**Exhibit 3**

Statement of Account in form of September 29, 2025 Email to Defendants' Counsel with
Account Statement and September 19, 2025 Demand Letter to Defendants

 Outlook

---

## Re: AOC Healthcare and Heisu - New Horizon Medical Solutions

---

**From** Bart Verdirame <bart.verdirame@nhmedical.com>
**Date** Mon 9/29/2025 4:35 PM
**To** Philip Reizenstein <phil@reizensteinlaw.com>
**Bcc** New Horizon Legal <Legal@nhmedical.com>

📎 4 attachments (8 MB)
092925 Heisu Research Statement.pdf; Heisu NHMS Net 45 Agreement_12-30-2024_Executed.pdf; 092925 AOC Healthcare Center.pdf; AOC NHMS_NTerm_CTP_Agmt_Net 45 Q - AOC Healthcare (12-30-24)_Executed.pdf;

Phil, as discussed, I am attaching the agreement and account statements for Heisu Research and AOC Healthcare.

Heisu owes $6,553,097.32.  Of their invoices, 100% are over 6 months past due. They last made a payment in early June.

AOC Healthcare owes $1,336,883.53.  All of these are well over 5 months past due, and the last payment they made was over 5 months ago.

My clients are expecting my Legal Department to file suit, and we are prepared to do so.  I hope your conversations with your clients are constructive and that we will see payment shortly.  Thank you.

For your reference, I am attaching payment instructions I have received from our F&A team, with wire transfer being preferred. Thanks.

Bart



**Bart J. Verdirame**
General Counsel
www.nhmedical.com

**E:** bart.verdirame@nhmedical.com
**C:** 702.807.3380  |  **O:** 702.378.6863
**A:** 8395 W Sunset Rd #200, Las Vegas, NV 89113

---

**From:** Philip Reizenstein <phil@reizensteinlaw.com>
**Sent:** Monday, September 29, 2025 5:03 AM
**To:** Bart Verdirame <bart.verdirame@nhmedical.com>
**Subject:** Re: AOC Healthcare and Heisu - New Horizon Medical Solutions

Sorry for late response. Yes I will call your office today at 2pm Miami time.

Phil
Sent from my iPhone


On Sep 25, 2025, at 9:53 PM, Bart Verdirame <bart.verdirame@nhmedical.com> wrote:


Thanks, Phil.  Let me know if 2:00 Eastern on Monday works for you.  I also have a lot of flexibility tomorrow, so if you're available you can just call my office at 702-378-6863 at any time that works for you.  Thanks.

Bart



**Bart J. Verdirame**
General Counsel
www.nhmedical.com

**E:** bart.verdirame@nhmedical.com

**C:** 702.807.3380  |  **O:**
702.378.6863

**A:** 8395 W Sunset Rd #200, Las
Vegas, NV 89113

---

**From:** Philip Reizenstein <phil@reizensteinlaw.com>
**Sent:** Thursday, September 25, 2025 1:09 PM
**To:** Bart Verdirame <bart.verdirame@nhmedical.com>
**Subject:** Re: AOC Healthcare and Heisu - New Horizon Medical Solutions

Good afternoon. Please call me Phil. Thank you for the confirmation and I will use this email moving forward. I am available to discuss most of Monday 92/9 and the afternoon of 9/30 and understanding the time differences later in the afternoon (Miami time) is fine with me.
Phil

On Thu, Sep 25, 2025 at 11:58 AM Bart Verdirame <bart.verdirame@nhmedical.com> wrote:

> Mr. Reizenstein, I wanted to confirm receipt of your September 24, 2025 letters (addressed to my yahoo.com email address) regarding AOC Healthcare and Heisu, in response to my September 19, 2025 demand letters on behalf of New Horizon Medical Solutions to each company.  My contact information is below.  Please let me know when you have a chance to touch base.  Thanks.
>
> Bart



**Bart J. Verdirame**
General Counsel
www.nhmedical.com

E: bart.verdirame@nhmedical.com

C: 702.807.3380  |  O:
702.378.6863

A: 8395 W Sunset Rd #200, Las
Vegas, NV 89113

--



### Phil Reizenstein

305-444-0755  |  www.reizensteinlaw.com
2828 Coral Way Suite 540 Miami, FL, 33145

   

This email is covered by attorney–client privilege and the work product privilege. If you are not the intended recipient of this email do not read this email. This transmission is intended to be delivered to and read by the named addressee(s) only, and may contain information that is confidential, proprietary, attorney work-product or attorney-client privileged.  If this information is received by anyone other than the named addressee(s), Under no circumstances shall this material be read, used, copied, reproduced, stored or retained by anyone other that the named addressee(s) except with the express and actual consent of the sender.



New Horizon Medical Solutions
8395 W Sunset Road, Suite 200
Las Vegas NV 89113
United States

# Statement

09/29/2025

**Billing Address**
Heisu Research Group LLC
100 NW 170th St.
Suite 105
North Miami Beach FL 33169
United States

| | **Amount Due** |
|---|---|
| | $6,553,097.32 |

| Date | Description | Charge | Payment | Balance |
|---|---|---|---|---|
| 08/29/2020 | Balance Forward | | | $0.00 |
| 01/01/2025 | Invoice #INV-006326 | $267,562.34 | | $267,562.34 |
| 01/01/2025 | Invoice #INV-006329 | $267,562.34 | | $535,124.68 |
| 01/06/2025 | Invoice #INV-005638 | $267,562.34 | | $802,687.02 |
| 01/06/2025 | Invoice #INV-005636 | $229,339.15 | | $1,032,026.17 |
| 01/06/2025 | Invoice #INV-005635 | $181,560.16 | | $1,213,586.33 |
| 01/06/2025 | Invoice #INV-005652 | $191,115.96 | | $1,404,702.29 |
| 01/06/2025 | Invoice #INV-005632 | $191,115.96 | | $1,595,818.25 |
| 01/06/2025 | Invoice #INV-005637 | $191,115.96 | | $1,786,934.21 |
| 01/06/2025 | Invoice #INV-005640 | $191,115.96 | | $1,978,050.17 |
| 01/06/2025 | Invoice #INV-005631 | $229,339.15 | | $2,207,389.32 |
| 01/06/2025 | Invoice #INV-005634 | $229,339.15 | | $2,436,728.47 |
| 01/06/2025 | Invoice #INV-005623 | $277,118.14 | | $2,713,846.61 |
| 01/06/2025 | Invoice #INV-005650 | $229,339.15 | | $2,943,185.76 |
| 01/06/2025 | Invoice #INV-005622 | $258,006.55 | | $3,201,192.31 |
| 01/06/2025 | Invoice #INV-005639 | $229,339.15 | | $3,430,531.46 |
| 01/06/2025 | Invoice #INV-005633 | $267,562.34 | | $3,698,093.80 |
| 01/08/2025 | Invoice #INV-005833 | $267,562.34 | | $3,965,656.14 |
| 01/08/2025 | Invoice #INV-005817 | $267,562.34 | | $4,233,218.48 |
| 01/08/2025 | Invoice #INV-005791 | $267,562.34 | | $4,500,780.82 |
| 01/08/2025 | Invoice #INV-005793 | $277,118.14 | | $4,777,898.96 |
| 01/08/2025 | Invoice #INV-005794 | $181,560.16 | | $4,959,459.12 |
| 01/08/2025 | Invoice #INV-005816 | $191,115.96 | | $5,150,575.08 |
| 01/08/2025 | Invoice #INV-005835 | $191,115.96 | | $5,341,691.04 |
| 01/08/2025 | Invoice #INV-005822 | $191,115.96 | | $5,532,807.00 |
| 01/08/2025 | Invoice #INV-005814 | $229,339.15 | | $5,762,146.15 |
| 01/08/2025 | Invoice #INV-005818 | $229,339.15 | | $5,991,485.30 |
| 01/08/2025 | Invoice #INV-005834 | $229,339.15 | | $6,220,824.45 |
| 01/08/2025 | Invoice #INV-005792 | $229,339.15 | | $6,450,163.60 |
| 01/08/2025 | Invoice #INV-005819 | $229,339.15 | | $6,679,502.75 |
| 01/08/2025 | Invoice #INV-005813 | $267,562.34 | | $6,947,065.09 |
| 01/22/2025 | Invoice #INV-005823 | $630,682.66 | | $7,577,747.75 |



New Horizon Medical Solutions
8395 W Sunset Road, Suite 200
Las Vegas NV 89113
United States

# Statement

09/29/2025

| Date | Description | Charge | Payment | Balance |
|------|-------------|--------|---------|---------|
| 02/05/2025 | Invoice #INV-006130 | $210,227.56 | | $7,787,975.31 |
| 02/05/2025 | Invoice #INV-006132 | $210,227.56 | | $7,998,202.87 |
| 02/05/2025 | Invoice #INV-006136 | $191,115.96 | | $8,189,318.83 |
| 02/05/2025 | Invoice #INV-006135 | $191,115.96 | | $8,380,434.79 |
| 02/05/2025 | Invoice #INV-006124 | $133,781.18 | | $8,514,215.97 |
| 02/05/2025 | Invoice #INV-006126 | $133,781.18 | | $8,647,997.15 |
| 02/05/2025 | Invoice #INV-006125 | $133,781.18 | | $8,781,778.33 |
| 02/05/2025 | Invoice #INV-006127 | $172,004.37 | | $8,953,782.70 |
| 02/05/2025 | Invoice #INV-006128 | $172,004.37 | | $9,125,787.07 |
| 02/05/2025 | Invoice #INV-006129 | $172,004.37 | | $9,297,791.44 |
| 02/05/2025 | Invoice #INV-006131 | $191,115.96 | | $9,488,907.40 |
| 02/05/2025 | Invoice #INV-006134 | $191,115.96 | | $9,680,023.36 |
| 02/05/2025 | Invoice #INV-006133 | $191,115.96 | | $9,871,139.32 |
| 04/04/2025 | Payment #PYMT1714 | | $644,574.00 | $9,226,565.32 |
| 05/16/2025 | Payment #PYMT2246 | | $1,695,792.00 | $7,530,773.32 |
| 05/29/2025 | Payment #PYMT1867 | | $661,878.00 | $6,868,895.32 |
| 06/06/2025 | Payment #PYMT2310 | | $315,798.00 | $6,553,097.32 |

| Current | 1-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | Amount Due |
|---------|-----------|------------|------------|--------------|------------|
| $0.00 | $0.00 | $0.00 | $0.00 | $6,553,097.32 | $6,553,097.32 |

**Pay Now**

**New Horizon Medical Solutions**
8395 W. Sunset Road, Suite 200
Las Vegas, NV 89113
Tel: 702-960-2913

**www.nhmedical.com**

September 19, 2025

**SENT VIA EMAIL:**
Heisu Research Group LLC
scuesta@heisuresearch.com and contactus@heisuresearch.com

**DEMAND FOR PAYMENT OF $6,553,097.32**

Dear Ms. Cuesta:

As you are aware, on December 30, 2024, you entered into a contract with New Horizon Medical Solutions to purchase some of our medical products (the "Agreement"). Pursuant to the terms of the Agreement, payment is due within fourteen (14) days of your receipt of reimbursement from the applicable Federal Payor for the related patient claim.

To date, payment in the amount of **$6,553,097.32** remains outstanding. In accordance with the terms of our Agreement, a late payment fee of 1% per month may be applied to any unpaid balance beyond the due date.

You are hereby given *five (5) business days* from the date of this notice to remit full payment of the outstanding balance. Failure to do so will result in New Horizon Medical Solutions pursuing legal remedies, including but not limited to collection of the amount owed and recovery of all associated legal costs.

In addition, if you are ordering or planning to order additional products, please note that your account is on hold, and shipments are being suspended, pending your compliance with the Agreement including our receipt of full payment.

Please note that any discount, or your decision to forego payment to New Horizons Medical Solutions resulting in "free product", triggers reporting obligations for adherence to the Federal Anti-kickback Statute Discount Safe Harbor (42 C.F.R. § 1001.952(h)).  We provided net invoices for the products reflecting the discounts provided and expect the products to be paid as invoiced.  To forego payment creates compliance concerns about your billing payors for unpaid products. Specifically, any such free (or discounted) product should be reported to Medicare, Medicaid, commercial, and/or other federal or private payers. Further, as the facility billing for these procedures, you are solely responsible for accurately reporting discounts and providing appropriate claim notification to the payer that the facility fee has been reduced because your facility did not incur the cost of our product.

Your failure to pay also triggers reporting obligations under the National Physician Payment Transparency Program (Open Payments), a.k.a. "Sunshine Act", which is a federal law that

**New Horizon Medical Solutions**
8395 W. Sunset Road, Suite 200
Las Vegas, NV 89113
Tel: 702-960-2913

**www.nhmedical.com**

requires medical product companies to report to the federal government certain payments and other transfers of value that they make to physicians, either directly or indirectly to entities they have an interest in. This includes debt forgiveness, so any non-payment of amounts owed will be reported by us, and as such would be made available the HHS Office of Inspector General and the public at large on the Centers for Medicare and Medicaid Services Open Payments (Sunshine) website.

Finally, to the extent any billing information has been submitted which included documentation (such as an invoice) which indicates New Horizons Medical Solutions products were paid for when you are foregoing payment, you may want to contact your legal counsel to consider whether this may violate federal or state laws, or private insurance policies. For example, the False Statements Accountability Act of 1996, 18 U.S.C. § 1001, makes it a crime to knowingly and willfully make false statements to the federal government. Other federal laws, state laws, and policies of major insurers may be implicated as well given the windfall created by foregoing payment.

Should you have any questions or wish to discuss this matter further, please contact me at 702-378-6863 at your earliest convenience.

Sincerely,

Bart J. Verdirame
General Counsel

Electronically Filed
10/27/2025 12:57 PM
Steven D. Grierson
CLERK OF THE COURT

# RETURN OF SERVICE

**State of Nevada**                    **County of Clark**                    **County Civil Court**

Case Number: A-25-930696-C

Plaintiff:
**New Horizon Medical Solutions, LLC**

SRQ2025041780

vs.

Defendant:
**Heisu Research Group LLC, et al.**

For:
New Horizon Medical Solutions, LLC
8395 W Sunset Rd #200,
Las Vegas, NV 89113

Received by JAVIER CISNEROS on the **22nd day of October, 2025** at **1:58 pm** to be served on **SABRINA CUESTA, 100 NW 170 ST, SUITE 105, NORTH MIAMI BEACH, FL 33169**.

I, JAVIER CISNEROS, do hereby affirm that on the **23rd day of October, 2025** at **4:05 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **SUMMONS, AFFIDAVIT / DECLARATION OF SERVICE UNDER PENALTY OR PERJURY, AND COMPLAINT WITH EXHIBITS** with the date and hour of service endorsed thereon by me, to: **SABRINA CUESTA** at the address of: **152 NW 168TH STREET, SUITE 105, NORTH MIAMI BEACH, FL 33169**, and informed said person of the contents therein, in compliance with state statutes.

**Military Status:** The person served with said documents refused to state whether or not the Defendant is in the Military Service of the United States of America.

**Marital Status:** Based upon inquiry of party served, they refused to state whether or not the Defendant is married.

**Additional Information pertaining to this Service:**
25.9287, -80.2033

**Description** of Person Served: Age: 26, Sex: F, Race/Skin Color: White, Height: 5'5", Weight: 160, Hair: Blonde, Glasses: N

I certify that I am over the age of eighteen, am a certified process server in good standing in the judicial circuit in which the process was served, and I have no interest in the above action. Under penalty of perjury, I declare that I have read the foregoing verified return of service and that the facts stated in it are true. No Notary Required Pursuant to F.S. 92.525(2).

_____
**JAVIER CISNEROS**
MDC # 2139

**360 Legal, Inc.**
**201 Fletcher Ave.**
**Suite 100**
**Sarasota, FL 34237**
**(888) 360-5345**

Our Job Serial Number: SRQ-2025041780
Ref: HEISU RESEARCH GROUP LLC

Copyright © 1992-2025 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

Electronically Filed
11/4/2025 10:06 AM
Steven D. Grierson
CLERK OF THE COURT

**NOAC**
MICHAEL V. CRISTALLI, ESQ.
Nevada Bar No. 6266
WILLIAM D. SCHULLER, ESQ.
Nevada Bar No. 11271
FORREST ZIMMERMAN, ESQ.
Nevada Bar No. 17017
**CLARK HILL PLC**
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135
Telephone:  (702) 862-8300
Facsimile:  (702) 778-9709
E-mail:  mcristalli@clarkhill.com
         wschuller@clarkhill.com
         fzimmerman@clarkhill.com

Attorneys for Plaintiff,
New Horizon Medical Solutions, LLC

## DISTRICT COURT

## CLARK COUNTY, NEVADA

* * *

| | |
|---|---|
| NEW HORIZON MEDICAL SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> HEISU RESEARCH GROUP, LLC; SABRINA CUESTA, an individual; HUGO ROMEU, an individual; DOES I through X, inclusive; and ROES Business Entities I through X, inclusive; <br><br> Defendants. | CASE NO. A-25-930696-C <br><br> DEPARTMENT NO. 10 <br><br> **NOTICE OF ASSOCIATION OF COUNSEL** |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Michael V. Cristalli, Esq., William D. Schuller, Esq., and

Forrest Zimmerman, Esq. of the law firm Clark Hill PLC, located at 1700 S. Pavilion Center Drive,

Suite 500, Las Vegas, Nevada 89135, Tel: (702) 862-8300, Fax: (702) 778-9709, hereby associate

as counsel of record with Bart J. Verdirame, Esq. in the above-entitled action on behalf of Plaintiff,

New Horizon Medical Solutions, LLC.

Page 1 of 3

All further documents, pleadings, discovery and correspondence shall be served on:

Michael V. Cristalli, Esq.
William D. Schuller, Esq.
Forrest Zimmerman, Esq.
Clark Hill, PLC
1700 S. Pavilion Center Drive, Ste. 500
Las Vegas, Nevada 89135
Tel : (702) 862-8300
Fax : (702) 778-9709
mcristalli@clarkhill.com
wschuller@clarkhill.com
fzimmerman@clarkhill.com

DATED this 4th day of November 2025.

CLARK HILL PLC

By  /s/ Forrest Zimmerman, Esq.
MICHAEL V. CRISTALLI, ESQ.
Nevada Bar No. 6266
WILLIAM D. SCHULLER, ESQ.
Nevada Bar No. 11271
FORREST ZIMMERMAN, ESQ.
Nevada Bar No. 17017
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135

Attorneys for Plaintiff, New Horizon Medical Solutions, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Clark Hill PLC, and that on the 4th day of November 2025, I caused to be served a true and correct copy of the foregoing **NOTICE OF ASSOCIATION OF COUNSEL** in the following manner:

(ELECTRONIC SERVICE) Pursuant to Administrative Order 14-2, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by the Court's facilities to those parties listed on the Court's Master Service List.

 /s/ Tanya West
An Employee of CLARK HILL PLC